Katherine A. FLOOD, David Spiker, John Spiker, and William Peterson, Appellants,

v.

Irwin A. KATZ, Appellee,

In re Katherine A. Flood, David Spiker, John Spiker, and William Peterson, Relators.

No. 05–07–01262–CV.

Court of Appeals of Texas, Dallas.

Aug. 6, 2009.

Rehearing Overruled Oct. 15, 2009.

John Emmett, John Emmett, P.C., Dallas, TX, for Appellant.

Baxter W. Banowsky, Banowsky Betz & Levine, P.C., Dallas, TX, for Appellee.

Before Justices BRIDGES, LANG, and LANG–MIERS.

## OPINION

Opinion By Justice BRIDGES.

Appellants Katherine Flood, David Spiker, John Spiker, and William Peterson (collectively referred to as "Flood") appeal the summary judgment in favor of appellee Irwin Katz. In two issues, Flood challenges whether the trial court erred in granting: (1) summary judgment in favor of Katz and (2) Katz's objections to Flood's

evidence. In a related original proceeding, appellants requested a stay of the trial court proceedings. We reverse the trial court's judgment and remand for further proceedings. We dismiss appellant's petition for writ of prohibition.

## Background

Katz was a director of a company known as International Basic Resources, Inc. ("IBR"). Flood filed suit against the IBR directors, including Katz, in Idaho for violations of federal and state securities laws and consumer protection laws. As a part of the discovery process in Idaho, Katz produced some of his financial records and tax returns. The Idaho court later entered summary judgment in favor of Flood against the IBR directors in the amount of $1,158,943.08. Katz filed an appeal of the judgment in Idaho.

During the pendency of the Idaho appeal, Flood domesticated the judgment in Texas and commenced post-judgment discovery against Katz. Flood asserts that efforts at collection in Texas included scheduling the deposition of Katz to determine if the assets previously disclosed pursuant to the Idaho court's discovery order remained exempt from execution as asserted by Katz. In his brief, Katz admits that he "actively resist[ed] post-judgment discovery." Due to Flood's collection efforts in Texas, Katz threatened to file for bankruptcy protection. In February of 2003, Flood served a notice of intention to take Katz's deposition with subpoena duces tecum. Katz filed his motion to quash the deposition notice. No order on this motion appears in the record. In April of 2003, Flood served a first amended notice of intention to take Katz's deposition with subpoena duces tecum. In May of 2003, the parties entered into a rule 11 agreement to effectuate supplemental discovery

in aid of collection of the judgment. Subsequently, Flood filed a motion to compel discovery responses, and the trial court entered an Agreed Order which stated Katz violated the rule 11 agreement and required him to sit for his deposition and produce financial documents.

The Agreed Order also stated that "the parties announce they are in discussions in an effort to schedule a mediation of this case...." A mediation was ultimately scheduled for July 2003 without the deposition of Katz being taken. Flood argues the discovery produced prior to the Idaho judgment and the representations of Katz and his attorneys led Flood to believe Katz lacked the assets to discharge the Idaho judgment. Flood states that there was an agreement to meet based on the representations of Katz and his attorneys regarding Katz's inadequate assets and, ultimately, Flood agreed to compromise the judgment for "substantially less than the judgment amount." A settlement agreement was executed between the parties following mediation. As a result of the settlement, the Texas action and the appeal of the Idaho judgment were dismissed with prejudice.

In March of 2005, Flood discovered that Katz had transferred certain assets into his wife's name prior to the mediated settlement. After the settlement with Flood, Katz asked his wife to return the transferred assets. His wife refused to return the assets, and Katz filed for divorce. In the divorce action, Katz and his wife filed affidavits which enumerated their discussions regarding the transfer of properties prior to and after the Idaho judgment was obtained against Katz. Flood alleges the transfers were fraudulent and made "in order to avoid payment of the likely judgment."

Flood intervened in the Texas divorce

action[1] and alleged fraud and fraudulent inducement, fraudulent transfer to defraud creditors, conspiracy, and an action based upon unresolved compromised claims. Katz moved for a no-evidence summary judgment against Flood on the following grounds: (1) there was no evidence of Flood's claims of fraud and fraudulent inducement; (2) there was no evidence Flood has a "claim" of fraudulent transfer pursuant to Tex. Bus. & Com.Code Ann. § 24.001, et seq.; (3) because Flood's fraud claim fails, there is no evidence of conspiracy; (4) because Flood's fraud claim fails, there is no evidence that Flood has any viable claims against Katz which have not been fully resolved by the settlement agreement; and (5) because Flood's fraud claim fails, there is no evidence Flood is entitled to punitive damages or attorneys' fees. Katz also moved for a traditional summary judgment pursuant to the following grounds: (1) Katz made no misrepresentations to Flood; (2) if such misrepresentations were made, Flood did not reasonably rely upon the misrepresentations; (3) the fraudulent transfer claim fails because Flood does not have a "claim" against Katz as defined in Tex. Bus. & Com.Code Ann. § 24.001; (4) Flood's conspiracy claim fails because Flood failed to show the conspiracy was the proximate cause of damages to Flood; (5) Flood's "unresolved Compromised Claims" are barred by the applicable statute of limitations; (6) Flood's "unresolved Compromised Claims" are barred by res judicata; and (7) Flood is not able to recover on a claim that would entitle Flood to punitive damages and attorney's fees.

Flood submitted multiple affidavits as evidence in response to Katz's combined motion for summary judgment. We specifically discuss the evidence contained in six of the affidavits.

First, Flood submitted the affidavit of Jerry W. Biesel, one of the attorneys for Katz. Biesel's affidavit states, in pertinent part, as follows:

> I was contacted by Ahron Katz to provide representation concerning a lawsuit against Ahron Katz and several other defendants. The lawsuit had something to do with a corporation in Idaho and a summary judgment had been entered against [Katz].... Early in the conversations about assets, he told me that he owned some securities in an account but that [Mrs. Katz] was his broker and that *she had transferred them to her account* .... I told him that I doubted that any transfer at this point would be effective but it might delay the judgment creditor long enough to allow the appellate court to hear the case. In addition to the securities, [Katz] told me about some real property that he owned and I told him that it would be quite easy for them to register their foreign judgment and trap that property. [Mrs. Katz] asked me if the property could be transferred to her and I told her that it could but that it probably would be vulnerable to an attack by the judgment creditor.... *Eventually [Katz] decided to transfer some real estate to his wife ... to protect it from being executed upon and sold at an auction.* During our conver-

---

1. After discovering Katz's transfer of assets, Flood brought a motion in the Idaho state court to set aside the satisfaction of judgment as to Katz. The motion was granted for the reason Katz had committed fraud on the court by concealing assets. Pending appeal, Flood revived the foreign judgment in Texas. In October 2006, the Idaho Supreme Court entered its opinion, concluding that the trial court had improperly raised the issue of "fraud on the court" sua sponte and reversed the decision. Following this decision, Flood withdrew the domestication of the foreign judgment and intervened in the Texas divorce action.

sations no one ever mentioned the word gift. The property was not a gift and I did not put the word "gift" in when I designated the consideration on the deeds.... The only reason for any transfer that I ever head [sic] discussed was the need to *keep the property out of the hands of the judgment creditor* until such time as the appeal was heard or some other arrangement made.

(emphasis added).

Next, the affidavit of Katherine Flood, a plaintiff in the Idaho lawsuit and subsequent intervenor in the Katz's divorce action, states:

...

4. During the Idaho case, I was advised about the representations made by Mr. Katz in his production of financial records as well as the representations of his attorneys. At that time I had no information to dispute the representations or to suggest collusion.

...

8. At the mediation, *I thought I was aware of the correct financial limitations of all of the defendants.* Based on that information, in essence I was confronted with a choice of proceeding to trial and collection of judgment against the debtors with no expectation of getting paid if I proceeded or finding an acceptable compromise. *I accepted the representations by Mr. Katz's financial records and the word of his attorneys that he could not pay a big judgment.*

...

10. *If I had been advised that Mr. Katz had transferred all of his assets to his wife after the partial judgment, I would not have accepted Mr. Katz's proposal for compromise* .... The *compromise did not make me whole* and I would have insisted as a minimum I be paid the amount of the partial judgment as a condition of settling the remaining claims.

11. I am offended to now learn Mr. and Mrs. Katz perpetrated a fraud on me by purposefully lying through their agents about their wealth *when those agents had actually transferred the assets to Mrs. Katz solely to avoid my judgment.* I was not given the information in good faith by Mr. Katz *who did everything he possibly could to hide the true amount of his assets* .... *I relied to my detriment* on the lies he imposed when I was persuaded there was no money left in the accounts of Mr. Katz to pay the partial judgment or the future judgment for violation of state laws.

(emphasis added).

In addition, the affidavit of Mrs. Katz provides:

Later in the marriage, [Katz] was involved in a lawsuit and had been sued, which ultimately ended up in a judgment being taken against him. [Katz] became very concerned that creditors would attach his assets which were substantial in nature. Therefore, in an attempt to avoid his creditors, *he began gifting all of his real property and other assets to me,* beginning in January of 2003....

(emphasis added).

Flood's evidence also contained the affidavit of Katz which states, in part, as follows:

[Mrs. Katz's] affidavit further admits that the assets were transferred due to a lawsuit and judgment arising from a lawsuit in Idaho that began prior to the marriage between myself and [Mrs.]

Katz.... I was *concerned about the judgment attaching to my significant assets* due to the fact that the case was on appeal and I had been advised that even though the appeal would be won that any assets seized potentially would not be recovered after we prevailed.... Ultimately the lawsuit settled and the judgment was paid *without any reference to the existence of or lack of any assets.*

(emphasis added).

Next, the affidavit of Elie Balas, an acquaintance of Katz, states:

... I had a conversation with [Mr. and Mrs. Katz] together while they were both on the phone in approximately March, 2003 concerning the lawsuit that was pending against [Katz] in Idaho. We discussed the *transfer of assets due to the lawsuit in Idaho* and [Mrs. Katz], being the active talker in the conversation, told me about the whole case and *the assets that had already been transferred from [Katz] to her name.* ...

(emphasis added).

Finally, the affidavit of Pete Sessions, a long time acquaintance of Mr. and Mrs. Katz, provides:

In the summer of 2003 I had a discussion with both [Mr. and Mrs. Katz] via telephone wherein they discussed their *plan to have [Mrs. Katz] hold [Katz's] lifetime savings and assets while attempting to resolve [Katz's] ongoing legal dispute* ....

(emphasis added).

Katz did not object to the above-referenced affidavits. Rather, Katz objected to portions of the affidavits of C. Matthew Andersen, John Spiker, David Spiker and William Peterson, which were also submitted by Flood in response to the combined motion for summary judgment. The trial court sustained Katz's objections to that evidence. The trial court then granted Katz's combined motion for summary judgment, and Flood filed a motion for new trial. In denying the motion for new trial, the trial court characterized the transfer of assets as a "red herring" and noted Flood had proceeded to compromise the judgment with "no post judgment discovery" and there was "no justifiable reliance" by Flood. This appeal ensued, and the motion to sever the claims of Flood from the divorce action was granted by the trial court.

**Standard of Review**

Because summary judgment is a question of law, a trial court's summary judgment decision is reviewed de novo. *See Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005); *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003); *Hightower v. Baylor Univ. Med. Ctr.,* 251 S.W.3d 218, 221 (Tex.App.-Dallas 2008, pet. struck). Our de novo standard of review extends to both traditional and no evidence summary judgments. *Shaun T. Mian Corp. v. Hewlett–Packard Co.,* 237 S.W.3d 851, 855 (Tex.App.-Dallas 2007, pet. denied).

The standard for reviewing a traditional summary judgment is well established. *See* Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). A defendant who moves for summary judgment must show the plaintiff has no cause of action. A defendant may meet this burden by either disproving at least one essential element of each theory of recovery or conclusively proving all elements of an affirmative defense. *See Wornick Co. v. Casas,* 856 S.W.2d 732, 733 (Tex.1993). A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *See Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.,* 644

S.W.2d 443, 446 (Tex.1982). After the movant has established a right to summary judgment, the burden shifts to the nonmovant to present evidence creating a fact issue. *See Kang v. Hyundai Corp.,* 992 S.W.2d 499, 501 (Tex.App.-Dallas 1999, no pet.).

We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. *See* Tex.R. Civ. P. 166a(i); *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.,* 12 S.W.3d 827, 832–33 (Tex.App.-Dallas 2000, no pet.). Thus, we must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *Gen. Mills,* 12 S.W.3d at 833. When analyzing no-evidence summary judgments, we consider the evidence in the light most favorable to the nonmovant. *Id.*

■ When a successful summary judgment movant presents both traditional and no evidence grounds, we must affirm it if it can be sustained under either standard. *Bradford Partners II, L.P. v. Fahning,* 231 S.W.3d 513, 517 (Tex.App.-Dallas 2007, no pet.). We first review the propriety of the no evidence summary judgment under Rule 166a(i), applying evidentiary legal sufficiency standards. *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 600 (Tex.2004). If those are not satisfied, we need not inquire further into whether the traditional summary judgment standards under Rule 166a(c) are met. *Id.*

### Analysis

On appeal, Flood complains that the trial court erred by: (1) granting summary judgment in favor of Katz and (2) granting Katz's objections to Flood's evidence. We first review the propriety of the no evidence summary judgment under Rule 166a(i), applying evidentiary legal sufficiency standards. *Ridgway,* 135 S.W.3d at 600.

■ Katz's first argument in his no evidence motion for summary judgment is that there was no evidence of Flood's claim of fraud. The elements of a cause of action for common law fraud are that (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, he knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the defendant made the representation with the intent that the plaintiff should act upon it; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff thereby suffered injury. *Ins. Co. of N. Am. v. Morris,* 981 S.W.2d 667, 674 (Tex.1998). To prevail on a claim of fraud, the plaintiff's reliance must be reasonable and justified. *Ortiz v. Collins,* 203 S.W.3d 414, 421 (Tex.App.-Houston [14th Dist.] 2006, no pet.).

■ Reviewing the evidence in favor of Flood, we conclude there is more than a scintilla of probative evidence to raise a fact issue as to each element of Flood's fraud claim. *See Gen. Mills,* 12 S.W.3d at 833. The affidavits of Biesel, Katherine Flood, Mrs. Katz, Katz, Balas, and Sessions, which were attached to Flood's response to the combined motion for summary judgment, provide such evidence.[2]

---

**2.** Katz argues generally that evidence of communications that took place during the July 2003 mediation are confidential pursuant to Rule 403 of the rules of evidence and chapter 154 of the Texas Civil Practice and Remedies Code. Under the facts and circumstances, we disagree. "Wrongful acts are not shielded because they took place during compromise negotiations." *Avary v. Bank of America, N.A.,* 72 S.W.3d 779, 799 n. 4 (Tex.App.-Dallas 2002, pet. denied). Furthermore, Flood is not prevented from proving a sepa-

These affidavits were not objected to by Katz.

The first two elements of fraud require that Katz made a material representation and the representation was false. *Morris*, 981 S.W.2d at 674. In her affidavit, Katherine Flood states she had previously been provided information by Katz, through documents and the representations of Katz's attorneys, regarding his financial status. She also indicates that she was not aware of the transfer of assets at the time of settlement, while the affidavits of Biesel, Mrs. Katz, Balas, and Sessions acknowledge a transfer of assets was made to Mrs. Katz to "keep the property out of the hands of the judgment creditor." Katz acknowledged in his affidavit that the lawsuit settled "without any reference to the existence of or lack of any assets."

Silence is equivalent to a false representation where circumstances impose a duty to speak and one nevertheless deliberately remains silent. *Lesikar v. Rappeport*, 33 S.W.3d 282, 299 (Tex.App.-Texarkana 2000, pet. denied). A duty to speak exists where the parties to a mediated settlement agreement have represented to one another that they have disclosed the assets known to them. *See Boyd v. Boyd*, 67 S.W.3d 398, 405 (Tex.App.-Fort Worth 2002, no pet.) (a duty to speak exists when, during mediation, the parties have represented to one another that they have disclosed the marital property known to them). "[W]hen one voluntarily discloses information, he has a duty to disclose the whole truth rather than making a partial disclosure that conveys a false impression." *Id.* (citing *World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 670 (Tex. App.-Fort Worth 1998, pet. denied)). Because the evidence demonstrates Katz transferred his assets without reference to

such assets at the time of settlement, we conclude more than a scintilla of evidence exists with regard to the first two elements of fraud. *Gen. Mills*, 12 S.W.3d at 833.

The third element of fraud requires that when Katz made the representation, he knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion. *Morris*, 981 S.W.2d 667, 674. The affidavits of Biesel, Mrs. Katz, Balas, and Sessions provide some evidence that Katz was aware of the transfer of assets and Katz, in his affidavit, acknowledges that a transfer of his "significant assets" was made. Yet, Katz also states there was no reference to the existence of or lack of assets in the settlement of the Idaho lawsuit. Again, because the evidence demonstrates Katz was aware of the transfer of assets and did not reference such assets at the time of settlement, more than a scintilla of probative evidence exists with regard to the third element of fraud. *Gen. Mills*, 12 S.W.3d at 833.

The fourth element of fraud is that Katz made the representation with the intent that Flood should act upon it. *Morris*, 981 S.W.2d 667, 674. Katherine Flood testified, in her affidavit, that Katz "did everything he possibly could to hide the true amount of his assets." Katz stated in his affidavit that the "lawsuit settled and the judgment was paid without any reference to the existence of or lack of any assets." We must emphasize that a duty to speak exists where the parties to a mediated settlement agreement have represented to one another that they have disclosed the assets known to them. *Boyd*, 67 S.W.3d at 405. Certainly, it is reasonable to infer that Katz intended Flood to settle the case without being apprised of the transfer of

rate cause of action, fraud in this case, simply because some of the acts complained of took

place during compromise negotiations. *Id.* at 799–800.

assets and the true amount of available funds to settle the case when he did not disclose such transfer. Thus, more than a scintilla of probative evidence exists on Flood's fourth element of fraud. *Gen. Mills*, 12 S.W.3d at 833.

Finally, the fifth and sixth elements of fraud require that Flood acted in reliance on the representation and thereby suffered injury. *Morris*, 981 S.W.2d 667, 674. Katherine Flood states, "If I had been advised that Mr. Katz had transferred all of his assets to his wife after the partial judgment, I would not have accepted Mr. Katz's proposal for compromise." She further testified that she "relied to [her] detriment on the lies he imposed" and that such compromise did "not make [her] whole." Again, more than a scintilla of evidence exists with regard to the fifth and sixth elements of fraud. *Gen. Mills*, 12 S.W.3d at 833.

Having determined more than a scintilla of evidence exists with regard to each element of Flood's fraud claim, we conclude the trial judge erred in granting summary judgment in favor of Katz as a matter of law. *See* Tex.R. Civ. P. 166a(i); *Gen. Mills*, 12 S.W.3d at 833. We need not inquire further into whether the traditional summary judgment standards under Rule 166a(c) are met. *Ridgway*, 135 S.W.3d at 600. Thus, we sustain Flood's first issue.

Because we have sustained Flood's first issue, we need not reach Flood's second issue.[3] We, therefore, reverse the trial court's judgment and remand the case to the trial court. Based on our disposition

of the appeal, we dismiss the petition for writ of prohibition.

---

**3.** In the second issue, Flood appeals the trial court's decision to sustain Katz's objections to some of Flood's evidence submitted in response to Katz's combined motion for summary judgment. Katz objected to portions of the affidavits of C. Matthew Andersen, John Spiker, David Spiker and William Peterson submitted by Flood. The trial court sustained Katz's objections. We have not relied upon the objected to affidavits in determining that more than a scintilla of evidence exists as to Flood's fraud claim and need not comment on their propriety here.