**Affirmed as modified; Opinion Filed April 22, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-01046-CV

### DANIEL JASON MORRIS, Appellant
### V.
### KRISHA MARIE VALK MORRIS SHOCKLEY, Appellee

**On Appeal from the 256th Judicial District Court
Dallas County, Texas
Trial Court Cause No. DF-15-12962**

## MEMORANDUM OPINION

Before Justices Myers, Molberg, and Carlyle
Opinion by Justice Myers

This case involves a suit to enforce a divorce decree. Daniel Jason Morris appeals the trial court's summary judgment in favor of Krisha Marie Valk Morris Shockley. Morris brings two issues contending the trial court erred by granting Shockley's motion for summary judgment because the summary judgment motion was a collateral attack on the divorce decree, and he brings one issue contending the trial court erred by denying Morris's objections to the affidavit of Don Valk, Shockley's father. Besides these stated issues, Morris also contends the trial court erred by granting Shockley's no-evidence motion for summary judgment because he presented some evidence supporting the element of his cause of action challenged by Shockley, and he also contends the trial court erred by awarding Shockley her attorney's fees. We conclude the trial court properly granted Shockley's no-evidence motion for summary judgment but that the trial

court erred by awarding costs and attorney's fees for collection and enforcement of the judgment. Accordingly, we modify the judgment in part and affirm the judgment as modified.

## BACKGROUND

Shockley and Morris were married in 2003. Shockley's father, Valk, purchased, built, and operated self-storage facilities. Morris worked with Valk to build some of Valk's self-storage facilities, including one on Highway 67 in Duncanville.

Shockley and Morris were divorced in 2011. The divorce decree contained the following provision:

> *Future Property Interests*
>
> Should Petitioner's father, Don Valk, sale [sic] the storage facility located at 303 E. Hwy. 67, Duncanville, Texas, the parties agree and IT IS ORDERED that the net proceeds from the sale of the aforementioned property shall be as follows, 34% to Don Valk; 33% to KRISHA MARIE VALK MORRIS [Shockley]; and 33% to DANIEL JASON MORRIS.

Although this provision in the divorce decree purported to state that Shockley and Morris had an interest in the net proceeds from a future sale of the Duncanville facility, Valk owned the facility, and he did not sign and was not a party to the divorce decree. Shockley and Morris did not have a written agreement with Valk giving them an interest in the net proceeds from a future sale of the facility.

In 2015, Valk entered into an agreement to sell twenty-four self-storage facilities, including the Duncanville facility, to Extra Space Storage for approximately $192.9 million. Part of the compensation was not in cash but consisted of about 1.5 million "OP Units."

While the sale was pending, Morris's attorney sent a letter to Shockley and Valk stating, "Mr. Valk had promised Mr. Morris 33% of the proceeds from sale of the Property as consideration for Mr. Morris's assistance in constructing mini storage facilities." The attorney asked to know the date of the sale and inquired whether Valk intended to keep his promise to Morris. The attorney

attached a copy of a motion to enforce the divorce decree he intended to file if Valk did not agree to share the proceeds with Morris. The motion to enforce requested an injunction barring the sale until Valk and Shockley agreed to share the proceeds as required by the divorce decree. Valk's attorney replied to Morris's attorney, stating that Valk owned the property and that neither Morris nor Shockley or their entities had any right, entitlement, or interest in the property. A few days later, Valk's attorney wrote back to Morris's attorney stating that if Morris intended to litigate Morris's claim for the proceeds of the Duncanville facility, then Valk would "withdraw this property from the sale and seek to resolve Mr. Morris' claims through litigation." Morris's attorney responded that he had not been authorized to file suit on behalf of Morris.

The sale, including the Duncanville facility, closed on April 14, 2015, and Valk received all the consideration for the transaction.

In July 2015, Morris filed a motion to enforce the divorce decree asking the court to enter an order awarding him "33% of all net proceeds from any sale" of the Duncanville facility.

In 2016, Valk conveyed some of the OP Units he received in the sale to each of his three children. Shockley received 55,133 of the OP Units on February 1, 2016. Morris then filed a supplemental motion to enforce the divorce decree asking the court to order Shockley "to turn over 50% of all proceeds received by her in connection with the sale of" the Duncanville facility. Shockley filed a motion for summary judgment asserting Morris had no evidence that she "breached a contractual obligation imposed upon her by the Provision" in the divorce decree. She also asserted numerous other grounds for summary judgment, including that the sale proceeds were not assets of the marriage, that she and Morris had no interest in the sale proceeds at the time of the divorce, and there was no conveyance of a future interest in the sale proceeds. The trial court granted Shockley's motion for summary judgment without specifying the ground, and the court ordered that Morris take nothing.

**SUMMARY JUDGMENT**

Morris contends the trial court erred by granting Shockley's no-evidence motion for summary judgment. Rule 166a(i) provides that a party "may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." TEX. R. CIV. P. 166a(i). We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. *See* TEX. R. CIV. P. 166a(i); *Flood v. Katz*, 294 S.W.3d 756, 762 (Tex. App.— Dallas 2009, pet. denied). Thus, we must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *See Flood*, 294 S.W.3d at 762. When analyzing a no-evidence summary judgment, "we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006) (per curiam) (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005)). A no-evidence summary judgment is improperly granted if the nonmovant presented more than a scintilla of probative evidence to raise a genuine issue of material fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). "More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions." *Id.* (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id.* (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

In reviewing a motion for summary judgment, evidence favorable to the nonmovant will be taken as true. *In re Estate of Berry*, 280 S.W.3d 478, 480 (Tex. App.—Dallas 2009, no pet.). The court indulges every reasonable inference in favor of the nonmovant and resolves all doubts

in favor of the nonmovant. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005). We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Tex. Workforce Comm'n v. Wichita Cty.*, 548 S.W.3d 489, 492 (Tex. 2018). When the trial court does not specify the grounds for its ruling, we affirm the summary judgment if any of the summary judgment grounds are meritorious. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

### WHETHER SHOCKLEY BREACHED THE DIVORCE DECREE

Shockley's no-evidence motion for summary judgment asserted Morris had no evidence Shockley "breached a contractual obligation imposed upon her by the Provision" or that she "engaged in any action or failed to take any action which may be construed as a failure to perform a promise."

Morris argues he presented some evidence Shockley breached the provision in the decree because "[u]ndisputed summary judgment evidence . . . established that [Shockley] received proceeds from the Property. Daniel did not."

Morris's theory of the case is that under the provision in the decree, Morris and Shockley were required to share equally any net proceeds they received from the sale of the Duncanville facility. We conclude Morris failed to present any summary judgment evidence in at least two areas. First, Morris presented no evidence that there were any net proceeds resulting from the sale of the Duncanville facility. Second, Morris presented no evidence that Shockley was obligated by the provision to transfer any OP Units to Morris.

To prove Shockley violated the provision by not transferring any OP Units to him, Morris had to present some evidence that there were "net proceeds" from the sale of the Duncanville facility. "Net proceeds" are "[t]he amount received in a transaction minus the costs of the transaction (such as expenses and commissions)." *Net Proceeds*, BLACK'S LAW DICTIONARY (10th

ed. 2014); *see also Burlington Resources Oil & Gas Co. LP v. Tex. Crude Energy, LLC*, 2019 WL 983789, at *8 (Tex. Mar. 1, 2019) ("We have previously interpreted a 'net proceeds' royalty provision to authorize deduction of post-production costs."). Thus to prove the existence of "net proceeds" from the sale of the Duncanville facility, Morris had to prove that the amount of revenue from the sale of the facility exceeded the amount of the deductible costs, such as commissions, debt secured by the property, etc.

Morris presented evidence that the twenty-four facilities sold for $192.9 million, but he presented no evidence of how much of that sum was attributable to the sale of the Duncanville facility. Morris states that the sale price divided by the twenty-four facilities is about $8 million per facility. However, there is no evidence that Valk and Extra Space determined the price in that manner. The evidence shows the facilities did not have the same number of storage units. Shockley testified that the Duncanville facility, with 490 storage units, was one of the smaller facilities and that the largest facilities had over a thousand storage units. Given the difference in size of the facilities, we decline to presume that Valk and Extra Space assigned equal value to the facilities.

Even if Morris had presented some evidence of the sale price of the Duncanville facility, Morris presented no evidence of the amount of costs, expenses, and other items that should be deducted from the sale price of the Duncanville facility to determine the amount of net proceeds. Morris presented evidence that when Valk was negotiating with the former owner of the property to purchase the raw land, Valk offered to pay $400,000 cash. Shockley testified Valk paid "three something" for the land. However, there is no evidence of the actual purchase price, whether any money was borrowed to purchase the land, the cost of building the storage facility on the land, whether any of the building cost was financed, whether any debt remained, or what other expenses, commissions, etc. should be deducted to determine net proceeds from the sale of the property. We

–6–

have previously determined that evidence of gross revenue, by itself, is no evidence of net profits. *See Hoss v. Alardin*, 338 S.W.3d 635, 654 (Tex. App.—Dallas 2011, no pet.). The same reasoning applies in this case—evidence that there may have been proceeds attributable to the sale of the Duncanville facility is no evidence that there were net proceeds from the sale.

Morris also presented no evidence that Shockley was under an obligation to transfer any OP Units to him. Morris argues the divorce decree required that he and Shockley share equally any net proceeds they received from the sale of the Duncanville facility. But that is not what the decree provides. The decree states the division of the net proceeds "shall be as follows, 34% to Don Valk, 33% to Krisha Marie Valk Morris [Shockley], and 33% to Daniel Jason Morris." The order does not require Shockley to deliver half of any net proceeds she receives to Morris. Instead, it gives her the right to receive up to one-third of the net proceeds. The decree did not expressly require Shockley to transfer any net proceeds to Morris. But even if that requirement is implicit, Shockley would not have had any obligation to do so until she had received more than her one-third share of the net proceeds. Morris presented no evidence of the amount of the net proceeds realized from the sale of the Duncanville facility. Therefore, he also failed to present evidence that Shockley received more than one-third of the total net proceeds from the sale of the Duncanville facility.

We conclude Morris presented no evidence that Shockley did not comply with the divorce decree. We overrule Morris's argument that the trial court erred by granting Shockley's no-evidence motion for summary judgment.

## MORRIS'S REMAINING ISSUES

Morris's first and second issues contend that Shockley's motion for summary judgment was a collateral attack on the divorce decree. These issues were directed at Shockley's other grounds for summary judgment. Morris's argument that the motion for summary judgment was a

–7–

collateral attack on the divorce decree did not apply to Shockley's summary judgment ground that Morris had no evidence she failed to comply with the divorce decree. Accordingly, we do not reach Morris's first and second issues. *See* TEX. R. APP. P. 47.1.

Although not presented in one of his stated issues on appeal, Morris argues the trial court erred by denying his objections to Valk's affidavit. In a no-evidence motion for summary judgment, the burden is on the nonmovant to produce evidence in support of its claims or defenses; the movant has no burden to present evidence in support of the motion. *See* TEX. R. CIV. P. 166a(i) (trial court must grant no-evidence motion for summary judgment "unless the respondent produces summary judgment evidence raising a genuine issue of material fact"); *Merriman*, 407 S.W.3d at 248 (nonmovant has burden to produce evidence raising a genuine issue of material fact). Valk's affidavit had no effect on the question of whether Morris presented any evidence that Shockley did not comply with the divorce decree. Therefore, the trial court's denial of Morris's objections cannot have resulted in an improper judgment. Accordingly, Morris has not shown the trial court's denial of Morris's objections to Valk's affidavit was reversible error. *See* TEX. R. APP. P. 44.1(a)(1) (judgment may not be reversed on appeal for error of law unless court of appeals determines the error "probably caused the rendition of an improper judgment").

Morris also argues the trial court erred by awarding Shockley her attorney's fees. The trial court awarded Shockley attorney's fees of $24,375.00 and costs of $996.05, plus post-judgment interest. A trial court may award costs and reasonable attorney's fees in a proceeding for enforcement of a divorce decree under chapter 9, subchapter A of the Family Code, which includes this lawsuit. *See* TEX. FAM. CODE ANN. §§ 9.013 (costs), 9.014 (attorney's fees). We review a trial court's decision to award or deny attorney's fees under section 9.014 for an abuse of discretion. *Collins v. Moroch*, 339 S.W.3d 159, 166 (Tex. App.—Dallas 2011, pet. denied).

Morris asserts the trial court abused its discretion by awarding Shockley her attorney's fees. He argues the award of attorney's fees was not in the interest of justice[1] in this case because Shockley and Valk "creatively structured a transaction to commit a fraud on the court, [and] [Morris's] enforcement action sought to enforce the decree as intended by the parties at the time of its execution." However, Morris produced no evidence that Shockley violated the divorce decree. Accordingly, we conclude the trial court did not abuse its discretion by awarding Shockley her attorney's fees under section 9.014.

Morris also argues the trial court erred by awarding Shockley all her "reasonable and necessary attorney's fees, costs, writs and processes as may be necessary in the enforcement and collection of this Judgment." Morris objected to this award in the trial court. In *Riley v. Riley*, we concluded that the trial court abused its discretion by awarding in a judgment the costs, including attorney's fees, for enforcement or collection of that judgment. *See Riley v. Riley*, No. 05-17-00385-CV, 2018 WL 1790067, at *6 (Tex. App.—Dallas Apr. 16, 2018, no pet.) (mem. op.). Sections 9.013 and 9.014 permit awards of costs and attorney's fees for a proceeding to enforce a divorce decree under chapter 9, subchapter A of the Family Code. The only relief awarded to Shockley was her costs and attorney's fees. Any action to enforce the award of costs and attorney's fees would not be "a proceeding to enforce a property division under" subchapter A, chapter 9 of the Family Code (costs) or "a proceeding under" that subchapter (attorney's fees). *See* FAM. §§ 9.013, .014. Moreover, Shockley presented no evidence of what these costs and fees would be. *See Riley*, 2018 WL 1790067, at *6.

---

[1] Morris argues the award of attorney's fees under section 9.014 must be "in the interest of justice," citing *Drabek v. Cavazos*, No. 13-14-00063-CV, 2014 WL 4402501, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 29, 2014, pet. denied) (mem. op.). The court in *Drabek* made no such statement. Instead, what the court of appeals said was, "We have broad discretion to remand the issue of attorneys' fees in the interest of justice." The court did not state that the trial court's award of attorney's fees had to be in the interest of justice. However, even if the award of attorney's fees must be in the interest of justice, we conclude Morris failed to establish the trial court abused its discretion by awarding attorney's fees that were not in the interest of justice.

We conclude the trial court erred by awarding Shockley her "reasonable and necessary attorney's fees, costs, writs and processes as may be necessary in the enforcement and collection of this Judgment."

## CONCLUSION

We modify the trial court's judgment to delete the award of "attorney's fees, costs, writs, and processes as may be necessary in the enforcement and collection of this Judgment," and we affirm the judgment as modified.

/Lana Myers/
LANA MYERS
JUSTICE

171046F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

Daniel Jason Morris, Appellant

No. 05-17-01046-CV          V.

Krisha Marie Valk Morris Shockley,
Appellee

On Appeal from the 256th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DF-15-12962.
Opinion delivered by Justice Myers.
Justices Molberg and Carlyle participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

The following provision is **DELETED**:  "IT IS FURTHER ORDERED, AJUDGED AND DECREED THAT Krisha Marie Valk Morris Shockley is entitled to recover from Petitioner, Daniel Jason Morris, all of Krisha Marie Valk Morris Shockley's reasonable and necessary attorney's fees, costs, writs, and processes as may be necessary in the enforcement and collection of this Judgment."

It is **ORDERED** that, as modified, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Krisha Marie Valk Morris Shockley recover her costs of this appeal from appellant Daniel Jason Morris.


Judgment entered this 22nd day of April, 2019.