ANN CRAWFORD McCLURE, Chief Justice
At its core, this case involves two siblings fighting over an inheritance from their parents. The two principal issues before us are not so much the merits of the dispute, but whether one sibling has standing to complain of the other's actions, and in what court this fight should take place. Appellant Linda Mayfield claimed in part that her brother, Appellee Gary Bruce Peek, (Bruce)[1] prevailed upon their mother to remove assets from a revocable trust at a time when their mother allegedly lacked the mental capacity to do so. Bruce convinced the district court below that Mayfield lacked standing to make that claim. He also claimed that another court should hear that sort of claim, because by the time of this suit, his mother had passed away and her will was in probate. We conclude that: (a) Mayfield has standing to challenge the trust transaction at issue; (b) the trial court was never presented with a proper basis establishing that another court had acquired dominant jurisdiction over the trust issue raised here; (c) the district court would have properly declined to hear matters exclusive to a guardianship proceeding or a will contest; and (d) that it was an abuse of discretion *256 to summarily exclude all of the evidence pertinent to a pleaded cause of action (based on a perceived lack of subject matter jurisdiction) and then to make findings on the merits of that claim. We accordingly reverse in part the judgment below.
FACTUAL SUMMARY
Russell and Dorothy Peek were the parents of Mayfield and Bruce. During their lifetime, Russell and Dorothy set up the Peek Family Revocable Trust (2000), a revocable trust that would benefit Bruce, Mayfield, and several other relatives.[2] Several real properties and other assets were placed in the trust. The trust was to become irrevocable on the death of either Russell or Dorothy. Russell and Dorothy were trustees until January 2010 at which time Mayfield's daughter, Lannie Latshaw, and Bruce were appointed as trustees. Latshaw was asked to resign as trustee in October 2012.
By the time Dorothy and Russell were in their nineties, the record reflects significant family discord. Bruce and Mayfield, though brother and sister, had not spoken to one another in thirty years. Several family members claimed that Dorothy and Bruce had restricted access to Russell, who at times was in an assisted living center, and at times lived in a house that Bruce had built right next to his own residence. For the time Russell was in the assisted living center, the facility excluded visits from most family members, and disallowed Russell access to a phone.[3] A locked gate restricts access to Bruce's property. Some family members called the police and adult protective services, questioning whether Russell was being held against his will. Conversely, Dorothy alleged that a disinherited relative had made death threats against her, and others were taking advantage of Russell's diminished mental capacity for financial gain.
In 2011, Dorothy was appointed as guardian of Russell. After her death on November 20, 2012, Bruce was appointed Russell's guardian. Russell passed away on May 12, 2014.
PROCEDURAL SUMMARY
The suit before us was first filed on April 20, 2012, by Dorothy against her niece, Michael Belinda Presswood, and her granddaughter, Regina Dill Peek. After Dorothy passed away, Bruce was named independent executor to her estate and continued the lawsuit in both his representative and individual capacity. The last live petition, which added Mayfield as a defendant, asserted claims of libel, slander, and intentional infliction of emotional distress. These claims largely arose out of the defendants' alleged calls to the authorities expressing concern for how Russell was being treated by Dorothy, and later by Bruce.
All of the defendants filed counterclaims against Bruce alleging three claims germane to this appeal, which we categorize as the Trust Claim, the Guardianship Claim, and the Will Claim:
• Bruce, as trustee of The Peek Family Revocable Living Trust (2000), violated his fiduciary duties to the *257 trust's beneficiaries by using undue influence over Russell and Dorothy to amend and ultimately terminate the trust, to remove all other beneficiaries except for himself and to transfer all of the trust property to another trust. The suit alleges this as a violation of his duties as trustee (the 'Trust Claim').
• Mayfield asserts that Bruce and a non-party attorney applied to make Dorothy guardian of Russell knowing she was not qualified or capable, or alternatively, they learned that while she was guardian, and took advantage of the situation to take for themselves trust and estate assets. Mayfield also makes a similar claim against Bruce in his capacity as guardian of Russell's person (the 'Guardianship Claim').
• Bruce participated in a joint enterprise with a non-party attorney to use undue influence over Dorothy to change her will to disinherit Mayfield (the 'Will Claim').[4]
Mayfield sought an accounting from the original trust, and the later trust that Bruce set up, along with restitution of financial gains to Bruce and return of any property removed. The suit also sought removal of Bruce as trustee, and appointment of a successor trustee and receiver to take possession of the trust assets.
The case was set for a non-jury trial. On the first day of trial, Bruce filed a "Motion in Limine, Supplemental Motion to Strike and Motion for Proof." That motion first claimed that a contingent or remainder beneficiary of a revocable trust has no vested interest in the trust property, such that Mayfield lacked standing to complain of Dorothy's transfer of assets as the settlor of the trust. The motion secondarily claimed that Mayfield failed to properly notify all the beneficiaries of the proceeding, which acts as a bar under the Property Code. As the parties argued the merits of the motion, Bruce also claimed that the trust, guardianship, and will issues belonged in either the court that probated Dorothy's will, or the guardianship proceeding that had been set up for Russell.
The trial court granted the motion with respect to the standing issue, and denied it as to the notice issue. As a result, the trial court consistently denied the admission of any evidence pertaining to the mental condition of Dorothy, and excluded evidence regarding the trust, including the trust document itself, and any specific trust transactions, including the alleged removal of assets from one trust and the creation of another. The trial court also disallowed a bill of exceptions by Mayfield as to the excluded questions on these topics.[5]
*258 At the conclusion of the trial, the court denied the relief that both parties had sought. It ruled against Bruce's libel, slander, and intentional infliction claims, and denied all relief to Mayfield. The trial court issued findings of fact and conclusion of law that outline each of Mayfield's pleaded theories, set out the elements of each claim, and then made findings of fact and conclusions of law for each. As to Mayfield's Trust Claim, the trial court found:
Counsel for Defendants and Mayfield admitted the Peek Family Revocable Living Trust (2000) was a revocable trust at the time of any transfer complained of by Mayfield and Defendants.
Counsel for Defendants and Mayfield admitted that any transfers from Peek Family Revocable Living Trust (2000) occurring before Dorothy Peek's death were made by the Settlor, Dorothy Peek, to herself.
Any influence by Bruce Peek, if any, was not of a nature that would overpower or subvert the wills of Russell and Dorothy Peek, as Settlors, to make independent decisions to amend or transfer assets from the Peek Family Revocable Living Trust (2000).
Any influence by Bruce Peek, if any, on Russell and Dorothy Peek was not so great that the decision to amend or transfer assets from the Peek Family Revocable Living Trust (2000) would not have occurred but for such influence, if any.
Bruce Peek did not act in bad faith or violate any duties owed to the beneficiaries and pursued the best interests of the trust's beneficiaries during the period when any transfers occurred.
Based on these fact findings, the trial court concluded that Mayfield had no interest in the trust at the time of any transfer and thus no standing to contest any transfer or transaction by Dorothy.
With respect to the Guardianship Claim, the trial court found:
A court of competent jurisdiction determined Dorothy Peek was a qualified guardian and issued an order appointing her as Guardian in that capacity and the Court finds that such appointment of Dorothy Peek as Guardian appears to be regular in all respects.
Counsel for Defendants and Mayfield admitted that the Peek Family Revocable Living Trust (2000) was a revocable trust, at the time of any alleged transfer or attempted transfer of assets from the trust as complained by Mayfield and Defendants.
Any influence of Bruce Peek or Dorothy Peek, if any, or Russell Peek, if any, was not of a nature that such influence would overpower or subvert their will to make independent decisions in relation to the trust or any other matters.
Any influence of Bruce Peek on Dorothy Peek or Russell Peek, if any, was not so great that the decision to amend or make transfers from the Trust would not have occurred but for such influence.
*259 Based on these fact findings, the trial court concluded as a matter of law that Mayfield had no vested interest and thus no standing to complain of any transfer by Dorothy. The trial court also concluded that Bruce did not exercise undue influence on Dorothy or Russell in relation to either of them in any decision to transfer assets from the Peek Family Revocable Living Trust (2000).
As to the Will Claim, the trial court found:
Dorothy Peek's Will was admitted to probate in a court of competent jurisdiction by an order that appears regular in all respects.
Any influence of Bruce Peek, if any, was not so excessive as to overpower or subvert the mind of Dorothy Peek to make an independent decision to change her prior Will or execute her final Will.
Any influence of Bruce Peek, if any, was not so great that Dorothy Peek's decision to execute her final Will would not have occurred but for such influence. Based on these fact-findings, the trial court concluded that Mayfield 'failed to prove undue influence by Bruce Peek or any other party over any alleged changes that Dorothy Peek may have made in her will.'
ISSUES FOR REVIEW
Mayfield brings six issues on appeal. The first five all relate to her Trust Claim. Her first issue contends the trial court erred by refusing to hear her Trust Claim. That issue has two subparts: (1) did Mayfield have standing to challenge the transfer of assets from a revocable trust; and (2) did another court have that issue before it? Her second and third issues challenge the legal and factual sufficiency of the evidence to support the findings that Bruce did not exert undue influence over his parents. The fourth issue complains the trial court abused its discretion in making findings germane to the merits of that claim after holding that she had no standing to bring the claim. Issue Five challenges the judicial admissions referenced in the trial court's fact findings. The sixth relates to her Guardianship and Will Claims. She contends that the trial court erred in making findings of fact and conclusions of law as to those claims given its conclusion she had no standing to assert the claims.
STANDARD OF REVIEW
In a non-jury trial, the trial court's fact-findings carry the "same force and dignity" as would a jury's verdict. Anderson v. City of Seven Points , 806 S.W.2d 791, 794 (Tex. 1991) ; Heritage Resources, Inc. v. Hill , 104 S.W.3d 612, 619 (Tex.App.-El Paso 2003, no pet.). The trial court's findings are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing the evidence supporting a jury's answer. Catalina v. Blasdel , 881 S.W.2d 295, 297 (Tex. 1994).
In a legal sufficiency review of the evidence, we consider the evidence in the light most favorable to the verdict. See AutoZone, Inc. v. Reyes , 272 S.W.3d 588, 592 (Tex. 2008). The test for legal sufficiency "must always be whether the evidence at trial would enable [a] reasonable and fair-minded [fact finder] to reach the [result] under review." City of Keller v. Wilson , 168 S.W.3d 802, 827 (Tex. 2005). Legal sufficiency review must credit favorable evidence if a reasonable fact finder could, and disregard contrary evidence unless a reasonable fact finder could not. Id . An appellate court will sustain a legal sufficiency or "no-evidence" challenge, if the record shows: (1) the complete absence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to *260 the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. Id . at 810.
When the party with the burden of proof suffers an unfavorable finding, the inquiry is whether the evidence establishes the fact or issue as "a matter of law." Serrano v. Union Planters Bank, N.A ., 162 S.W.3d 576, 580 (Tex.App.-El Paso 2004, pet. denied). When the party without the burden of proof suffers an unfavorable finding, the challenge on appeal is one of "no evidence to support the finding." Id. ; In re Estate of Livingston , 999 S.W.2d 874, 879 (Tex.App.-El Paso 1999, no pet.).
When a party appeals from a non-jury trial, it must complain of specific findings and conclusions of the trial court. Carrasco v. Stewart , 224 S.W.3d 363, 367 (Tex.App.-El Paso 2006, no pet.) ; see also Serrano , 162 S.W.3d at 580. A general complaint against the trial court's judgment does not present a justiciable question. Carrasco , 224 S.W.3d at 367 ; Serrano , 162 S.W.3d at 580. If the appellant does not challenge the trial court's findings of fact, these facts are binding upon both the party and the appellate court. Serrano , 162 S.W.3d at 580.
An appellate court reviews the trial court's conclusions of law de novo . BMC Software Belgium, N.V. v. Marchand , 83 S.W.3d 789, 794 (Tex. 2002) ; Austin Hardwoods, Inc. v. Vanden Berghe , 917 S.W.2d 320, 322 (Tex.App.-El Paso 1995, writ denied). We also review de novo the construction of rules and statutes, Pacific Employers Ins. Co. v. Torres , 174 S.W.3d 344, 346 (Tex.App.-El Paso, 2005, no pet.), as well as a trial court's application of uncontested facts to the law. Id . ; NCED Mental Health, Inc. v. Kidd , 214 S.W.3d 28, 32 (Tex.App.-El Paso, 2006, no pet.). With these standards in mind, we turn to the issues on appeal.
STANDING
Mayfield alleges that Bruce, as trustee of the Peek Family Revocable Living Trust (2000), violated his fiduciary duty when he allegedly convinced his mentally impaired mother to transfer assets out of the trust. The assets allegedly ended up in another trust that benefited Bruce. The trial court made findings of fact and conclusion of law that Mayfield lacked standing to complain of that action. One basis of the standing argument contends that because the trust was revocable during the lifetime of Dorothy and Russell, it had not vested in favor of any of the beneficiaries and thus they lacked a justiciable interest in any of its assets.
Mayfield's fourth issue challenges the trial court's fact finding that she judicially admitted the trust was revocable during Dorothy's lifetime, and that all the relevant transfers occurred during that time period. We agree and disagree in part. Mayfield did in fact judicially admit that the trust was revocable while both Dorothy and Russell Peek were alive.[6] We *261 agree with Mayfield, however, that the trial court's fact finding that all transfers from the trust occurred before Dorothy's death and that they were all made "by the Settlor, Dorothy Peek, to herself" cannot be sustained as the trial court disallowed any evidence as to any specific transfer. Consequently, there is no evidence or admission in the record to support that claim.
But taking as true the allegation that some property was transferred out the trust during Dorothy's lifetime brings us to the core question raised in the motion to strike: does a beneficiary of a revocable trust have standing to complain that a trustee has exerted undue influence over the settlor to alter or amend the trust, or that the settlor lacked the mental capacity to make the transfer. Bruce asserts that Moon v. Lesikar , 230 S.W.3d 800 (Tex.App.-Houston [l4th Dist.] 2007, pet. denied) directly answers that question.
In Moon , the court dealt with a dispute between a brother and sister over an asset that their father had placed in a revocable trust. During his lifetime, however, the father sold the asset to the brother at a sharply discounted value. Following the father's death, the sister sued her brother seeking in part a constructive trust and accounting for the asset. Id . at 802. Under the Property Code, "[a]ny interested person may bring an action under Section 115.001 of this Act." [Emphasis added]. TEX.PROP.CODE ANN. § 115.011(a) (West 2014). Section 115.001 gives a district court jurisdiction over proceedings against a trustee or concerning a trust. Id . An "interested person" is defined as "a trustee, beneficiary, or any other person having an interest in or a claim against the trust or any person who is affected by the administration of the trust." [Emphasis added]. TEX.PROP.CODE ANN. § 111.004(7) (West 2014). A "beneficiary" is "a person for whose benefit property is held in trust, regardless of the nature of the interest." Id. § 111.004(2). An "interest" is "any interest, whether legal or equitable or both, present or future, vested or contingent, defeasible or indefeasible." [Emphasis added]. Id. § 111.004(6).
The Moon majority noted that the father during his lifetime was the settlor, the sole beneficiary, and co-trustee of the trust, who had the power to revoke the trust. 230 S.W.3d at 806. Accordingly, the aggrieved sister lacked any justiciable interest in property that the father had removed from the trust, and thus lacked standing to bring her claim. A concurrence by Justice Guzman, however, believed that the standing issue was resolved by the Property Code, which permits a suit on behalf of contingent beneficiaries. Id . at 806-07. While the fact that the trust is revocable might deny those contingent beneficiaries any relief on the merits, that fact would not implicate a party's standing to present a justiciable issue. Id . Justice Guzman concurred in the result, because under the facts presented, the sister's claim indeed failed on its merits. The father was both the settlor and a trustee and it would be illogical to say that as "the settlor, in his capacity as trustee, [he] would have a duty to prevent himself, in his capacity as settlor, from revoking the trust." Id. at 809. Justice Guzman emphasized *262 that the settlor's decision to sell the trust assets were not alleged to be "the result of coercion, undue influence, lack of capacity, or was otherwise involuntary." Id . at 809.
The majority's standing analysis in Moon relied on three out of state cases: Hoelscher v. Sandage, 462 N.W.2d 289, 291 (Iowa Ct.App. 1990) ; In re Malasky, 290 A.D.2d 631, 736 N.Y.S.2d 151, 152 (N.Y.App.Div. 2002) ; and Siegel v. Novak, 920 So.2d 89 (Fla.App. 2006) (applying New York law). The last cited case actually holds the beneficiary had standing, and reasoned that because the settlor and trustee were not one in the same, the "withdrawals could conceivably be made without the settlor's knowledge or consent." 920 So.2d at 95. That situation seems more analogous to the claims here where Mayfield alleges that Bruce as the trustee overcame his mother's true desires, or she lacked the mental capacity to act on her own behalf.
We conclude that the concurring opinion in Moon offers a more reasoned view of standing. The concurrence gives due regard for the text of the Property Code which statutorily defines the test for standing. See Everett v. TK-Taito, L.L.C. , 178 S.W.3d 844, 850 (Tex.App.-Fort Worth 2005, no pet.) ("The common law standing rules apply except where standing is statutorily conferred."); Whittier Heights Maint. Ass'n, Inc. v. Colleyville Home Owners' Rights Ass'n, Inc. , 02-10-00351-CV, 2011 WL 2185699, at *3 (Tex.App.-Fort Worth June 2, 2011, no pet.) (not designated for publication)(mem.op.)("When standing is statutorily conferred, the statute itself serves as the proper framework for a standing analysis."). The Moon concurrence also avoids the inequitable result of a trustee avoiding any consequences for exerting undue influence over a mentally impaired settlor. While a trustee owes their duties to the settlor so long as the trust is revocable, the duty might well change if the settlor lacks the mental capacity to act. See Oakes v. Muka , 69 A.D.3d 1139, 1140, 893 N.Y.S.2d 677 (N.Y.App.Div. 3d Dept. 2010) (suit against trustee challenging transactions when settlor was diagnosed with Parkinson's and displayed symptoms of Alzheimer's); Cloud v. U. S. Nat. Bank of Oregon , 570 P.2d 350, 352-53, 280 Or. 83 (1977) (suit challenging transactions carried out by trustee when settlor had become incompetent and alternatively alleged to be under undue influence); Brundage v. Bank of Am. , 996 So.2d 877, 883 (Fla.4th Dist.App. 2008) (beneficiaries of revocable trust were entitled to present evidence relating to settlor's alleged incompetency related to questioned transactions). As one commentator suggests:
Consistent with the rule that the duties of a trustee of a revocable trust are owed exclusively to the settlor, at least while the settlor has capacity , the rights of non-settlor beneficiaries of a revocable trust generally are subject to the control of the settlor. Thus, as a general rule, the trustee cannot be held to account by other beneficiaries for its administration of a revocable trust during the settlor's lifetime. After the settlor's death, of course, the trustee is accountable to the trust's other beneficiaries for its administration of the trust after the settlor's death. Further, many courts have allowed other beneficiaries to pursue breach of duty claims after the settlor's death, related to the administration of the trust during the settlor's lifetime, when, for example, there are allegations that the trustee breached its duty during the settlor's lifetime and that the settlor had lost capacity, was under undue influence, or did not approve or ratify the trustee's conduct.
*263 George G. Bogert, Alan Newman, THE LAW OF TRUSTS AND TRUSTEES § 964 (3d ed. 2010) (footnotes omitted, italics added). We therefore conclude that while the settlors unfettered right to alter the trust is highly relevant to the merits of any claim asserted here, it does not deny the trial court subject matter jurisdiction over an undue influence or lack of mental capacity claim. Accordingly, to the extent the trial excluded consideration of the Trust Claims based on a standing concern, that decision was error. We sustain Issues One and Four.
WHICH COURT SHOULD HEAR THIS MATTER?
Bruce argued below that the counterclaims were pending in another court that had jurisdiction over the issues.[7] The trial court made express fact findings that a court of competent jurisdiction had determined that Dorothy was a qualified guardian and approved her appointment as guardian for Russell. The trial court also found that Dorothy's Will was admitted to probate in a court of competent.
We begin with a discussion of which court might have heard each of the disputed claims at issue. These events arose in Wise County, which has two county courts at law and a district court. TEX.GOV'T CODE ANN. § 25.2511(a) (West Supp. 2016)(establishing two county courts at law); TEX. GOV'T CODE ANN. § 24.448 (West 2004) (establishing 271st District Court). Wise County does not have a specially designated probate court. Its county courts at law, however, have been given original jurisdiction over probate matters. TEX.GOV'T CODE ANN. § 25.2512(a)(1).
The Will Claim belonged exclusively in the court exercising probate jurisdiction over Dorothy's estate. Generally, all probate proceedings must be heard in a court exercising original probate jurisdiction. Act of June 19, 2009, 81st Leg., R.S., ch. 1351, § 4A, 2009 TEX.GEN.LAWS 4273, 4275 (formally codified at TEX.PROB.CODE ANN. § 4A, now repealed and replaced with TEX.EST.CODE ANN. § 32.001(a) (West 2014)).[8] A county court at law exercising probate jurisdiction would have exclusive jurisdiction over probate matters to include the probate of a will. Id. at § 3(bb)(1) and (7). One predicate for probating a will is that the testator was of sound mind at the time of executing the will. See Act of June 12, 1969, 61st Leg., R.S., ch. 641, § 8, 1969 TEX.GEN.LAWS 1922, 1925 (formally codified at TEX.PROB.CODE ANN. § 88(b)(1), repealed, now TEX.EST.CODE ANN. § 256.152(a)(2)(B) (West 2014)). A related question is whether someone exerted undue influence over the testator. Act of *264 June 17, 2011, 82nd Leg. R.S., ch. 1338 § 1.17, 2011 TEX.GEN.LAWS , 3882, 3891 (formally codified at TEX.PROB.CODE ANN. § 84, repealed, now TEX.EST.CODE ANN. § 256.152(c)(2)(A)(B) )(including disclaimer of undue influence as part of self-proving declaration to admit will); Tips v. Yancey , 431 S.W.2d 763, 764 (Tex. 1968) (whether an instrument should be admitted to probate as a last will is a matter for determination in an application for probate of a will, and turns on whether the will has been revoked, whether it was properly executed, and "whether the maker had testamentary capacity and was not under undue influence (if raised) when it was executed."). Accordingly, the Will Claim which effectively challenged Dorothy's last will based on her mental competency, or Bruce's claimed undue influence, must be heard by the county court at law that probated her will. The district court properly declined to hear that claim.
At the time of the events here, the Probate Code also governed guardianship proceedings. Mayfield alleged in her Motion for New Trial that a temporary guardianship over Russell was first granted on June 23, 2011, and a permanent order was signed on August 19, 2011. Given those dates, the guardianship proceeding would have been governed by the 1993 version of the relevant Probate Code provisions. Act of June 19, 1993, 73rd Leg., R.S., ch. 957, § 76, 1993 TEX.GEN.LAWS 4081, 4182 (noting effective date).[9] Under that enactment, upon the filing of an application for the appointment of a guardian over a person or his estate, and until the guardianship is settled and closed, the administration of the estate is considered "one proceeding for purposes of jurisdiction and is a proceeding in rem." Act of June 19, 1993, 73rd Leg., R.S., ch. 957, § 76, 1993 TEX.GEN.LAWS 4081, 4182 (codified at TEX.PROB.CODE ANN. § 604, now repealed); Wood, ex rel. Green v. Dalhart R & R Mach. Works, Inc. , 259 S.W.3d 229, 230 (Tex.App.-Amarillo 2008, no pet.).
Under former Section 606(c) of the Probate Code :
In those counties in which there is a statutory probate court, county court at law, or other court exercising the jurisdiction of a probate court, all applications, petitions and motions regarding guardianships, mental illness matters, or other matters addressed by this chapter shall be filed and heard in those courts and the constitutional county court, rather than in the district courts, unless otherwise provided by the legislature....
Act of June 19, 1993, 73rd Leg., R.S., ch. 957, § 76, 1993 TEX.GEN.LAWS 4081, 4084 (codified at TEX.PROB.CODE ANN. § 606(c) )(now repealed). One of the matters described in the chapter is a motion to remove a guardian who becomes incapacitated or mismanages the affairs of the ward. Id . at 4123 (codified at TEX.PROB.CODE ANN. § 761(c)(4), (5) )(now repealed). The lynchpin of Mayfield's Guardian Claim is that Dorothy was not competent to manage Russell's affairs. She also claims Bruce later mismanaged Russell's affairs after Bruce was appointed guardian. These claims must be heard by the county court at law that first heard the guardianship application. The trial court did not err in refusing to hear the Guardianship Claim.
*265 As to the Trust Claim, the Property Code authorized the 271st District Court to hear the issues raised. Subject to exceptions we discuss below, a district court has original and exclusive jurisdiction over all proceedings against a trustee and all proceedings concerning a trust. TEX.PROP.CODE ANN. § 115.001(a) (West 2014). A non-exclusive list of those matter specifically include: "determinations of fact affecting the administration, distribution, or duration of a trust"; relieving a trustee of duties; and requiring an accounting. Id. at § 115.001(a)(6), (7), (8), and (9). Mayfield sued Bruce for breach of his duties as trustee of the Peek Family Revocable Trust (2000). She sought an accounting, complained of his actions with respect to administering the assets of Peek Family Revocable Trust (2000), and sought his removal as trustee of the PK Revocable Living Trust (the trust allegedly set up to hold the improperly transferred assets).
But while the district court had jurisdiction of those claims, its jurisdiction was not exclusive. Section 115.001 declares that the district court's jurisdiction is exclusive "except for jurisdiction conferred by law on ... a county court at law." Id . at § 115.001(d)(6). This exception, added in 2011, would create concurrent jurisdiction with a county court at law if it were also authorized to hear trust disputes. See Act of June 17, 2011, 82nd Leg., ch. 657, 2011 TEX.GEN.LAWS 1605, 1606 (adding county courts at law to exceptions). That authorization is found in the last major revision to the Probate Code before it was incorporated into the Estates Code.
A court exercising original probate jurisdiction also has jurisdiction over "matters related to the probate proceeding" as specified in former Section 4B of the Probate Code. Act of June 19, 2009, 81st Leg., R.S., ch. 1351, § 4A, 2009 TEX.GEN.LAWS 4273, 4275 (formally codified at TEX.PROB.CODE ANN. § 4A, now repealed and replaced with TEX.EST.CODE ANN. § 32.001(a) (West 2014)). Section 4B in turn provided that in a county with no statutory probate court, but a county court at law exercising original probate jurisdiction, one of the matters that can be "related" to a probate proceeding is the "interpretation and administration of an inter vivos trust created by the decedent whose will has been admitted to probate in the court." Id. at § 4B(3) (now codified at TEX.EST.CODE ANN. 31.002(b)(3) ). Though the textual grant of jurisdiction is not as broad as that given to a district court, it might fairly encompass Mayfield's claim because the transfer of property is an aspect of administration of a trust.
From these authorities, we discern that the Trust Claim could have been heard by the 271st District Court, or one of the county courts at law for Wise County if they were exercising original probate jurisdiction. As to the Trust Claim, the issue is not one of exclusive jurisdiction, but rather dominant jurisdiction. In re Puig , 351 S.W.3d 301, 305 (Tex. 2011) ("When the jurisdiction of a county court sitting in probate and a district court are concurrent, the issue is one of dominant jurisdiction.")
The Texas Supreme Court explains dominant jurisdiction this way:
The general common law rule in Texas is that the court in which suit is first filed acquires dominant jurisdiction to the exclusion of other coordinate courts. As a result, when two suits are inherently interrelated, a plea in abatement in the second action must be granted. This first-filed rule flows from principles of comity, convenience, and the necessity for an orderly procedure in the trial of contested issues. The default rule thus tilts the playing field in favor of according dominant jurisdiction to the court in which suit is first filed.
*266 In re J.B. Hunt Transport, Inc. , 492 S.W.3d 287, 294 (Tex. 2016) (footnotes and internal quotations omitted); see also In re Red Dot Bldg. System, Inc. , 504 S.W.3d 320 (Tex. 2016). While there are some exceptions to the rule, none is urged here.
The only question before the district court was whether another proceeding had been filed in a county court at law that raised the Trust Claim. We review the trial court's determination of this issue for an abuse of discretion. In re J.B. Hunt Transport , 492 S.W.3d at 294. We conclude the trial court abused its discretion in refusing to hear the Trust Claim if that refusal was based on some other court hearing the dispute. We find nothing in the record that shows another court had the Trust Claim before it, or that if so, that the other proceeding was filed prior to this lawsuit. The closest discussion of another action appears in this exchange between counsel and the court:
MR. BETHUNE: If a trustee takes advantage of the lack of mental competence of the settlor to end-to ultimately-to fulfill a plan, which is to take all of the trust property for himself at the exclusion of every beneficiary who is exactly in the same position of beneficiary as he is, then he has breached his fiduciary duties. That's our case. We'll prove it.
THE COURT: And that issue is pending in the County Court at Law?
MR. BETHUNE: No, there are no issues pending in the County Court at Law anymore. We had a case there to remove the trustee for various reasons-
THE COURT: So that issue-
MR. BETHUNE: The ward died.
One aspect of a court's discretion is whether the court has sufficient information before it to make a reasoned decision. Koch v. Koch , 27 S.W.3d 93, 95 (Tex.App.-San Antonio 2000, no pet.) ; Landon v. Jean-Paul Budinger, Inc. , 724 S.W.2d 931, 938 (Tex.App.-Austin 1987, no pet.) ("It is therefore essential that the appellate court appraise whether a rational decision could have been made by the trial court in light of the information available to it."). Without a record of some pleading filed in another action showing when it was filed, or what issues were raised, the trial court here simply did not have a basis to conclude that another court had dominant jurisdiction over the Trust Claim. We reach this conclusion confident that upon remand, a proper motion to abate could be filed if in fact another court has acquired dominant jurisdiction over these issues.[10]
DECISION ON THE MERITS
If in fact another court has all or parts of this present case before it, and that court has dominant jurisdiction, the appropriate action for the trial court would be to abate the present action. See In re J.B. Hunt Transport , 492 S.W.3d at 294 (noting that trial court must grant plea in abatement). If the trial court declined to hear the matter based on standing or subject matter jurisdiction, then the case should be dismissed, but not dismissed on its merits. See *267 Bland Indep. Sch. Dist. v. Blue , 34 S.W.3d 547, 554 (Tex. 2000) (noting that lack of standing should be raised through plea to the jurisdiction which defeats "a cause of action without regard to whether the claims asserted have merit"); In re C.M.C. , 192 S.W.3d 866, 870 (Tex.App.-Texarkana 2006, no pet.) (Dismissal is the appropriate disposition when a party lacks standing; it is not a decision on the merits of the case."). We can conceive of no basis upon which a court might decline to hear a claim, refuse to take evidence on the claim, and then issue a decision on the merits. Yet that is exactly what occurred here based on the findings of fact and conclusions of law that conclude Bruce did not exert undue influence over his mother with regard to the trust, her will, or the guardianship. The trial court erred in deciding the merits of a claim it refused to hear.
HARM
Neither party addresses the harm analysis we must consider before reversing a trial court. See TEX.R.APP.P. 44.1. That inquiry is complicated by the trial court's disallowance of a bill of exceptions. See State v. Biggers , 360 S.W.2d 516, 517 (Tex. 1962) (agreeing that it was error for trial court to deny party the right to call a witness to create a bill of exceptions for the purpose of showing the harmful and prejudicial effect of excluding the witness's testimony); Hogan v. Credit Motors, Inc. , 827 S.W.2d 392, 396 (Tex.App.-San Antonio 1992), writ denied , 841 S.W.2d 360 (Tex. 1992) (holding it was error to deny litigant ability to create bill of exceptions by quashing subpoenas for disallowed witnesses).
Even at that, there is a sufficient indication in the record to suggest the exclusion of the Trust Claim probably prevented Mayfield from presenting her claim to this Court. The record does show that Dorothy had several physical ailments. In 2009, Bruce reportedly told a police officer doing a welfare check that Dorothy "suffers from dimensia and altimers" [sic]. In October 2012 she broke her hip and a home health aide described her as delusional and hallucinating. Mayfield was attempting to show that a motion to modify the trust was filed five days before Dorothy died and the motion was approved on the day of her death. Further, because the trial court made specific fact findings on merits of claims which it refused to hear, Mayfield is exposed to the risk of collateral estoppel if indeed there is some other proceeding at which these matters are pending.[11]
CONCLUSION
We sustain Issues One through Five and reverse and remand the trial court's take nothing judgment against Mayfield as to her Trust Claim. We sustain Issue Six and reverse the judgment in favor of Bruce on the Guardianship and Will Claim, but remand those claims to be dismissed for want of jurisdiction, and not on the merits. We affirm the judgment as to any claims asserted by parties who did not appeal from the judgment, and affirm the judgment *268 as to those additional claims brought by Mayfield that were not challenged on appeal (the sanctions claims in Paragraph V of the counterclaim and the intentional infliction of emotional distress claim found in the first Supplemental Counterclaim). We remand for proceedings in accordance with this opinion.
Hughes, J., not participating

As this appeal involves multiple members of the Peek family, we shall refer to them by their given names.

Even though the primary issue in this appeal pertains to claims revolving around the trust, the trust documents themselves are not part of our record. Instead, we have a memorandum from a law office that describes some of its terms.

The Texas Department of Aging and Disability Services found these claims as applied to its rules were "unsubstantiated." Bruce contended any restrictions were medically necessary as Russell, who had Alzheimer's, was adjusting to the facility. We note the allegations only to frame the context of the dispute here.

The text of the counterclaim asserts a claim against one of Bruce's attorneys, but neither the "Parties" section of the pleading, nor the style, includes the attorney as an actual party. The counterclaim also asserts an intentional infliction of emotional distress theory, and further seeks sanctions, claiming the original suit by Dorothy was groundless and brought in bad faith. Those issues, decided adversely to Mayfield, are not challenged on appeal.

Mayfield's efforts to create a bill of exceptions was rebuffed by the trial court:
MR. BETHUNE : Your Honor, am I going to be allowed to put on testimony of Dorothy Peek's lack of mental capacity at the time these transactions occurred?
THE COURT : No.
MR. BETHUNE : No. Well, then I will be able to have my bill of exceptions, yes?
THE COURT : No.
MR. BETHUNE : Your Honor?
THE COURT : Did you hear what I said? That is not an issue in this court. That's enough-if I'm wrong as far as that ruling goes, then I'm wrong on that.
MR. BETHUNE : But I'll need to make a bill of exception, your Honor, to protect my record.
THE COURT : I have said there's no need-a bill of exceptions is only if you can't conclude what the legal issue is without it, and the legal issue is I've ruled that she has no standing to bring that particular action in this court.
....
THE COURT : I am letting you call your witness, and you may call your witness.
MR. BETHUNE : But I need-I mean, will the Court-is the Court going to let me make-I kept calling it bills of exception.
THE COURT : No, I'm not going to let you do that.
MR. BETHUNE : You're not going to let me make an offer of proof?
THE COURT : No.

Mayfield's Motion for New Trial, for instance, states that the "Peek Family Trust became irrevocable upon the death of the first to die of Dorothy and Russell Peek." Her counsel also agreed that the trust was revocable during Dorothy and Russell's lifetime:
MR. BETHUNE: The trust at issue says that it becomes irrevocable when the first settlor passes away.
...
THE COURT : We're having a competency hearing here today?
MR. BETHUNE : No, sir.
THE COURT : Well, then what are we having? You're claiming that she was incompetent to deed trust property out during her lifetime, so are you conceding the issue that if she's competent as trustee of this trust with the power to do whatever she wants to with the trust assets that this statute applies and she can do that?
MR. BETHUNE : Yeah, if she was mentally competent.
THE COURT : So your-this is a competency hearing applying to the time that she did these transactions? Is that what I'm hearing?
MR. BETHUNE : Yeah. I mean, the Court will have to make a decision whether these were legitimate transactions or not.

The district court did not grant a specific motion that another on-going lawsuit precluded the claims here, but the court's comments from the bench suggest that may have been its rationale:
[GARY PEEK'S COUNSEL]: Number one, things that Dorothy did during her lifetime-number one, we-we haven't admitted any of that. She has complete right to transfer things to herself, which she did. If that's an issue, that is an issue for Judge Wren because there's a probate court, not here.
THE COURT : I agree with that.

The original petition in this case was filed on April 2012. Dorothy passed away on October 20, 2012. These reference dates indicate the matters discussed here were governed by the 2009 revisions to the Texas Probate Code. Act of June 19, 2009, 81st Leg., R.S., ch. 1351, 2009 Tex.Gen.Laws 4273-4282. Effective January 1, 2014, the Probate Code was repealed and it was substantially replaced by the new Texas Estates Code. See Act of May 26, 2009, 81st Leg., R.S., ch. 680, 2009 Tex.Gen.Laws 1512, 1512-1732 (§§ 10-12 reflect the effective date of the Texas Estates Code and the repeal of the Texas Probate Code). Subject matter jurisdiction is determined as of the time that the suit is filed in the trial court. See Tex. Ass'n of Bus. v. Tex. Air Control Bd. , 852 S.W.2d 440, 446 n.9 (Tex. 1993).

The relevant provisions were amended by the 82nd Legislature, but those amendments applied only to guardianship proceedings commenced on or after the effective date of the Act-September 1, 2011. Act of June 17, 2011, 82nd Leg. R.S., ch. 1085, § 43(a)(2), 2011 Tex.Gen.Laws 2809, 2821 (codified at Tex.Prob.Code Ann. §§ 605, 607(A)-(E) )(now repealed).

A plea in abatement is the appropriate procedural vehicle to raise questions of dominant jurisdiction. In re Puig , 351 S.W.3d 301, 303 (Tex. 2011) ("The proper method for contesting a court's lack of dominant jurisdiction is the filing of a plea in abatement, not a plea to the jurisdiction as the relators filed here."). If another court has exclusive jurisdiction, then the question is one of subject matter jurisdiction that may be raised through a plea to the jurisdiction. See Speer v. Stover , 685 S.W.2d 22, 23 (Tex. 1985) (per curiam)(holding that pleas to the jurisdiction are properly pled to alert a court to its lack of subject matter jurisdiction).

Bruce contends these findings are superfluous and their effect is not yet ripe for review. The authority he cites does not support the proposition. Landerman v. State Bar of Texas , 247 S.W.3d 426 (Tex.App.-Dallas 2008, pet. denied) stands for the proposition that tendered but refused findings of fact do not require reversal of an otherwise proper judgment. El Paso Elec. Co. v. Public Utility Com'n of Texas , 917 S.W.2d 846, 871 n.6 (Tex.App.-Austin, 1995, writ dism'd by agr.) at most stands for the proposition that review of superfluous findings that might be used by an administrative agency in some future case was not ripe for review. We think that is a bit different from the situation where one party contends that the very same issues are presently pending in another court.