**AFFIRMED and Opinion Filed August 20, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-00704-CV

## IN THE ESTATE OF JOHN M. LITTLE, JR., DECEASED

**On Appeal from the Probate Court No. 1
Dallas County, Texas
Trial Court Cause No. PR-15-03606-1**

## MEMORANDUM OPINION
Before Justices Whitehill, Partida-Kipness, and Pedersen, III
Opinion by Justice Whitehill

This case involves a dispute between three siblings concerning funds in their deceased father's survivorship bank account that gave only one sibling survivorship rights. The trial court granted summary judgment for the account surviving party against his siblings' claims and entered a final take nothing judgment from which his siblings appeal.

A pivotal question is whether, absent additional facts not present here, a revocable trust's non-settlor co-trustee owes the trust's contingent beneficiaries fiduciary duties regarding the settlor's decisions to exclude assets from the revocable trust and instead deposit those assets in a survivorship account favoring the co-trustee as the sole surviving party. The answer is "no," because the settlor retains the prerogative to dispose of the assets under his or her control as he or she sees fit.

More specifically, appellants raise two issues. The first issue argues that the trial court erred in granting final summary judgment against them on their fiduciary breach and money had

and received claims[1]. We reject that issue because, although appellants have standing as trust beneficiaries complaining about appellee's conduct as a co-trustee instead of the settlor's conduct, appellants did not raise a genuine issue of material fact showing that appellee breached a fiduciary duty owed to them in this case.

The second issue argues that the trial court erroneously excluded certain evidence from the settlor's estate planning lawyer regarding the trust's creation—but before the settlor engaged in the transactions at issue. We reject this issue because appellants have not shown that the excluded evidence was relevant.

Accordingly, we conclude that the trial court did not err in granting summary judgment against appellants and affirm the trial court's judgment.

## I. BACKGROUND

John Little, Jr. (Father) had three children; Mary Ann, Jay,[2] and Dan.[3] The Little family owned a ranch and related livestock and equipment.[4] Father owned a 100% interest in the livestock and equipment. Prior to 2006, Mary Ann, Father, Jay, and Dan each owned a 25% undivided interest in the real estate.

Father also had a will and a revocable living trust (the Trust). According to Dan's affidavit, Father created a will dated June 2, 2010. Dan further stated that Father created the Trust in 2005 and amended and restated the Trust agreement in February 2014. Mary Ann and Jay do not dispute these facts, and the Trust agreements are in the record. The Will, however, is not.

---

[1] There is no argument or authority on appeal here or in the court below, concerning summary judgment on a "money had and received claim." We thus construe this solitary reference as part of the alleged breach of fiduciary duty claim.

[2] Jay died during the pendency of this suit. For purposes of this appeal, however, we refer to his estate as "Jay."

[3] Because the decedent, Father, and two parties have the same last name, we address Father's children by their first names.

[4] We draw the facts from the parties' summary judgment evidence.

Father named Dan, Mary Ann, and Jay residuary Trust beneficiaries, and he named himself and Dan co-trustees during Father's lifetime. The Trust further provided that Northern Trust would serve as trustee when Father died.

Both Trust agreements include a "Schedule of Property." Both schedules list "$10" as the Trust's only asset. There is no argument or evidence that Father ever deeded the ranch real estate or conveyed the ranch livestock and equipment to the Trust. Nor is there any evidence in the record that Father ever funded the Trust with anything other than $10.

In 2000, and again in October 2014, Father created survivorship bank accounts at Northern Trust. He named Dan as both accounts' sole surviving party. Mary Ann and Dan do not dispute these facts.

In 2006, Father sold his 25% interest in the ranch land to Mary Ann, Jay, and Dan, in exchange for which each signed a $169,500 promissory note secured by each child's interest in the real estate. Although the notes themselves are not in evidence, Dan's summary judgment affidavit states that the notes were "payable to Dad in the amount of $169,500 which were all payable on demand, though the understanding among our family members was that Dad would not make demand for payment until the ranch was sold to a third party." Mary Ann and Jay did not controvert this evidence. There is no argument or evidence that the Father transferred or conveyed the notes to the Trust.

Dan's affidavit further states:

As with the first Northern Trust survivorship account, Dad deposited whatever funds came into his possession into the second account and paid all of his living expenses and debts out of that account until his death, with me or my assistant Debbie Cooper helping make deposits and prepare and send out checks for him throughout that time until his death.

There is no contrary evidence.

A document dated March 24, 2014 (roughly eight years after the notes were executed) and captioned "RELEASE OF LIEN" is in the record. This document recites that Father and the Trust were the note payees. These documents, however, do not themselves contain a promise by any note obligor to pay any money to any payee.

The Little family sold the ranch in March 2014. In addition to the amount paid for the real estate, the purchaser paid: (i) $108,000 for equipment, (ii) $108,000 for livestock, (iii) $23,904.08 for a life estate on 24.820 acres of the ranch owned by a family partnership in which Father had an interest, and (iv) $134,723.68 for the partnership interest purchased in connection with the life estate. All of the sale proceeds attributable to Father's interests were deposited in the second survivorship account. There was $605,751.45 in that account when Father died in 2015.

By the Trust's terms, Dan ceased being a co-trustee when Father died. Although named as successor trustee, Northern Trust declined to serve. Consequently, the probate court appointed a substitute trustee who accepted that appointment.

Father's estate earned $4,349.24, which was deposited in the survivorship account.[5] And Dan paid $200,611.92 of Father's post-death expenses from that account.

After being told that the note proceeds were to become Trust property, Dan transferred money from the survivorship account to the trustee, including (i) $70,595.49 in proceeds from the promissory note payments, (ii) $23,904 received for the life estate, and (iii) $121,201.43 for Father's share of the partnership. He transferred the money so the trustee could cover Father's bequests and remaining expenses. Post-transfer, $216,000 in survivorship account funds remained. Those remaining funds form the basis of this dispute.

On December 9, 2015, Mary Ann and Jay sued Dan in the 191st District Court alleging that he breached a fiduciary duty regarding the transfer of funds from the revocable trust to the

---

[5] Neither party addresses the source of these funds or makes any separate argument about their treatment.

–4–

survivorship account. That case was subsequently transferred and made a part of the current probate court proceeding.[6]

The trustee moved for instructions seeking direction regarding the disposition of potential claims against Dan for the remaining survivorship account funds. The probate court subsequently entered an order finding that "pursuing the claims against Dan would not be in the best interest of the Trust, the Estate, or the beneficiaries." Accordingly, the probate court ordered the trustee to assign the potential claims against Dan 1/3 each to Mary Ann, Jay, and Dan—which the trustee did.

Dan moved for summary judgment arguing that (i) Mary Ann and Jay have no standing to assert their claims against him and (ii) there is no evidence that Dan breached a fiduciary duty in connection with the $216,000.

Mary Ann and Jay responded to that motion and attached the affidavit of James Mincey, Father's estate planning lawyer. Dan objected to paragraphs three through five of that affidavit, and the court sustained those objections. The court also sustained objections to Dan's summary judgment exhibit 4 (an email from Mincey).

The court granted Dan's summary judgment motion and entered a final judgment that dismissed with prejudice all claims that Mary Ann and Jay have asserted or could have asserted in that case. Mary Ann and Jay appeal from that judgment.

## II. ANALYSIS

### A. First Issue (Standing): Do Mary Ann and Jay have standing?[7]

Yes, they have standing because they complain about Dan's conduct as a co-trustee and not about their father's decisions as the Trust's settlor.

---

[6] The pleadings from the 191st court are not included in our record.

[7] Appellant's first issue address both standing and the duty/breach arguments. Because standing is conceptually a separate question from duty and breach, we separate this issue into two distinct parts.

Here, as in the court below, the parties dispute whether Mary Ann and Jay have standing. To have standing, a party must have a "sufficient relationship with the lawsuit so as to have a justiciable interest in its outcome." *Austin Nursing Ctr. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). Because standing is a component of subject-matter jurisdiction, we begin with this threshold issue. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 448 (Tex. 1993).

Subject matter jurisdiction can be raised at any time, including for the first time on appeal. *Id.* at 445. Whether subject matter jurisdiction exists is a question of law subject to de novo review. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

Dan argues that Mary Ann and Jay as contingent beneficiaries of a revocable trust have no standing to complain about what Father as the Trust's settlor chose to do with his money during his lifetime. Mary Ann and Jay respond that they are not complaining about Father's actions; instead, their complaints concern Dan's conduct as co-trustee and his alleged misappropriation of Trust property.

Determining whether a party has standing to assert a particular claim depends on the facts pled and the cause of action asserted. *Mazon Assocs., Inc. v. Comerica Bank*, 195 S.W.3d 800, 803 (Tex. App.—Dallas 2006, no pet.).[8] Standing may be predicated on statutory or common-law authority. *See Williams v. Lara*, 52 S.W.3d 171, 178–79 (Tex. 2001). When standing has been statutorily conferred, the statute itself serves as the proper framework for a standing analysis. *Aubrey v. Aubrey*, 523 S.W.3d 299, 311 (Tex. App.—Dallas 2017, no pet.).

Dan argues that *Moon v. Lesiker*, 230 S.W.3d 800, 806 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) directly answers the standing question here. We disagree.

---

[8] As previously noted, we do not have the petition in our record. But the summary judgment motion, response, and the court's judgment make clear that Dan's alleged fiduciary duty regarding the survivorship account funds is at issue.

*Moon* involved a dispute between a brother and a sister over an asset their father placed in a revocable trust. During his lifetime, however, the father sold the asset to the brother at a significantly discounted value. After the father died, the sister sued the brother seeking a constructive trust and an accounting for the asset. The *Moon* majority held that because the father was the settlor, sole beneficiary, and co-trustee of a trust that he had the power to revoke during his lifetime, the sister lacked any justiciable interest in property the father removed from the trust, and therefore lacked standing. *Id*. at 806.

Justice Guzman's concurrence, however, stated that the standing issue was resolved by the property code section permitting a suit by contingent beneficiaries. *Id*. at 806–807. Although she agreed with the majority that the revocable trust's contingent beneficiaries were not entitled to relief on the merits, Justice Guzman did not agree that such fact prevented their standing to present a justiciable issue. *See id.*

We conclude that *Moon's* concurring opinion is a more reasoned view of standing in this situation. Section 115 gives a district court jurisdiction over proceedings against a trustee or concerning a trust. Under the property code, "any interested person may bring an action under Section 115.001 . . . ." TEX. PROP. CODE §115.011(a). An "interested person" is defined as "a trustee, beneficiary, or any person having an interest in or claim against the trust or any person who is affected by the administration of the trust." TEX. PROP. CODE § 111.004(7). A "beneficiary" is "a person for whose benefit property is held in trust, regardless of the nature of the interest." *Id*. at 111.004(2). And an "interest" is "any interest, whether legal or equitable or both, present or future, vested or contingent, defeasible or indefeasible." *Id.* §111.004(6).

Mary Ann and Jay are trust beneficiaries, assignees of the trustee's claims, and interested persons as defined by the property code. Therefore, regardless of their ability to succeed on the merits, they have standing to assert their claims against Dan as co-trustee when the transactions

occurred. In reaching a summary judgment decision on the merits, the trial court implicitly reached the same conclusion which was not erroneous.

B.     **Second Issue: Did the trial court erroneously exclude evidence from Father's estate planning lawyer?**

Mary Ann and Jay's second issue argues that the trial court erred in sustaining Dan's objections to the Mincey affidavit. Because this issue's resolution affects our analysis of Mary Ann and Jay's first issue merits arguments, we discuss their second issue next. As discussed below, we conclude the evidence was properly excluded.

The rules of evidence control the admissibility of evidence in summary judgment proceedings; thus, we review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 163 (Tex. 2018). An abuse of discretion occurs when the trial court acts arbitrarily or without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). We must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). And we will set aside the trial court's judgment only if the "erroneous evidentiary ruling probably caused the rendition of an improper judgment." *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000); *see* TEX. R. APP. P. 44.1(a)(1).

Dan objected to the Mincey affidavit paragraphs three-five based on hearsay, relevance, and speculation. Mary Ann and Jay argue that the objections should not have been sustained because (i) the Mincey affidavit impeaches Dan's summary judgment affidavit, (ii) the evidence is admissible under TEX. R. EVID. 803 as a "then existing state of mind," and (iii) the evidence is admissible under the "Dead Man's Rule." *See* TEX. R. EVID. 601.

The complained-of paragraphs in the Mincey affidavit state that (i) when he executed the 2005 original and 2014 amended and restated Trust agreements, Father expressed his intent that

all of his assets would pass under the Trust, (ii) Father never expressed any intent that the cattle and equipment would be bequeathed, devised, or gifted to Dan, or their proceeds placed in a survivorship account, and (iii) Mincey was not aware, prior to Father's death that any assets were in a survivorship account. Instead, Mincey thought that the proceeds from all of Father's assets were in a Trust account. Mincey was surprised to learn about the survivorship account.

But to be admissible, evidence must be relevant to the issues presented in the case. TEX. R. EVID. 402.4; *City of Harlingen v. Estate of Sharboneau*, 48 S.W.3d 177, 186 (Tex. 2001). Evidence is relevant if: (i) it has any tendency to make a fact more or less probable than it would be without the evidence and (ii) the fact is of consequence in determining the action. TEX. R. EVID 401.

In determining relevancy, we look at the purpose of offering the evidence. *Rhey v. Redic*, 408 S.W.3d 440, 460 (Tex. App.—El Paso 2013, no pet.). The relevancy test is satisfied if there is some logical connection, either directly or by inference, between the fact offered and the fact to be proved. *Reliant Energy Servs., Inc. v. Cotton Valley Compression, L.L.C.*, 336 S.W.3d 764, 793 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

There is no logical connection here for several reasons.

To start, all funds on deposit in a survivorship account belong to the survivor, and the depositor's intent to use or regarding ownership of those funds may not be considered:

> The written agreements are determinative of the existence of a right of survivorship. Because the account cards are clear and unambiguous regarding the parties' intent to create joint accounts with the right of survivorship, no extrinsic evidence to the contrary is admissible.

*Banks v. Browning*, 873 S.W.2d 763, 765 (Tex. App.—Fort Worth 1994, writ denied); *accord*, *Sheffield v. Estate of Dozier*, 643 S.W.2d 197, 198 (Tex. App.—El Paso 1982, writ ref'd n.r.e.).

But even if evidence of Father's intent when creating the survivorship accounts were admissible, Mincey's affidavit would still be irrelevant for several reasons.

–9–

First, the disputed funds are in the survivorship account that Father opened in October 2014, roughly eight months after the February 6, 2014 Trust agreement amendment and restatement. It is Father's intent at the later point in time and after the ranch was sold and related funds were ultimately deposited in that account that is relevant. Even assuming the truth of what Mincey said, after signing the February 6th Trust agreement Father was free to change his mind about what to do with the note and sale proceeds and to deposit those funds in the then existing survivorship account. *Moon*, 230 S.W.3d at 806. Father was also free to transfer those remaining funds to the later survivorship account if he wanted to. *Id*. And there is no evidence that Father and Mincey communicated with each other during the intervening eight months following February 6th.

Second, the undisputed facts are that Father was familiar with survivorship accounts and had been using one, with Dan as the sole surviving party, as his primary operating account since 2000. So Mincey's affidavit suggests no inference that Father did not know and appreciate what he was doing when he created and deposited funds into the survivorship accounts.

Third, there is no evidence that a Trust bank account into which the sale and note proceeds could have been deposited existed in March 2014 when the ranch sold.

Fourth, there is no argument or evidence that Father lacked capacity when he created that survivorship account or that Dan exercised undue influence over Father at that or any other time. Nor did Mary Ann and Jay offer any other argument or evidence challenging the 2014 survivorship account's validity, which account passes outside of probate. *See* TEX. EST. CODE §§ 113.151, 113.158.

Fifth, there is no evidence suggesting that the proceeds from the equipment and livestock (or any other assets) were legally required to go in the Trust.

Sixth, whether Father's estate planning lawyer knew that Father had a survivorship account does not tend to negate the possibility that Father later decided to use the unquestionably existing survivorship account to pass certain assets outside of probate. Likewise, that Father did not tell Mincey when Father amended and restated the previously created (but apparently unfunded) Trust that he might later put certain funds in his survivorship account is without consequence. Neither statement has probative value as to whether Dan owed and breached a fiduciary duty in connection with assets for which there is no evidence that they were (i) actually conveyed to the Trust or (ii) deposited in an existing Trust bank account.

Therefore, the Mincey affidavit does not tend to support an inference that Father lacked the intent to create and fund the 2014 survivorship account exactly as Father did. Accordingly, we conclude that the trial court did not abuse its discretion in excluding the complained-of paragraphs in the Mincey affidavit, and we resolve Mary Ann and Jay's second issue against them.

**C.    First Issue (Breach):  Is there a fact issue regarding Mary Ann and Jay's fiduciary breach claim?**

No, because this record does not contain evidence showing that Dan breached any co-trustee's fiduciary duties regarding the funds at issue either because the record does not show that (i) these funds were Trust property or (ii) Dan breached any fiduciary duty regarding the handling of these funds if they were.

**1.    Standard of Review**

Dan's summary judgment motion argues that there is no evidence that he breached a fiduciary duty owed to Mary Ann and Jay regarding the disputed sums.[9] Rule 166a (i) provides that a party "may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden

---

[9] Dan's motion also argues that there is no evidence that Father "ever intended" for the disputed funds to be Trust Property. But as discussed in part II(B) above that is not the relevant issue. The relevant issue is whether Dan owed and somehow breached fiduciary duties to Mary Ann and Jay when Father ultimately decided to deposit the disputed funds in survivorship accounts designating only Jay as the surviving party.

of proof at trial." We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. *See* TEX. R. CIV. P. 166a(i); *Flood v. Katz*, 294 S.W.3d 756, 762 (Tex. App.—Dallas 2009, pet. denied). Thus, we must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the challenged elements. *See Flood*, 294 S.W.3d at 762.

When analyzing a no-evidence summary judgment, "we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006) (per curiam) (quoting *City of Keller*, 168 S.W.3d at 823).

A no-evidence summary judgment is improperly granted if the nonmovant presented more than a scintilla of probative evidence to raise a genuine issue of material fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). "More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions." *Id.* (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id.* (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

However, Dan supported his motion with his own affidavit and its attached exhibits. Furthermore, his motion argued that:

> The other reasons [in addition to a lack of standing] why the claims of Mary Ann and Jay's Estate should be extinguished by summary judgment is because the only evidence that exists regarding such claims supports the fact that [Father's] arranging for the deposit of the livestock and equipment sales proceeds into the survivorship bank account created at Northern Trust was done at his direction and in complete accord with his wishes.

This ground, together with its related evidence and argument, closely resembles a traditional summary judgment motion. Furthermore, a fiduciary, like a co-trustee, has the burden

–12–

to establish the fairness of his or her transactions with fiduciary property. *See Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 576 (Tex. 1963).

When we review a traditional summary judgment in favor of a defendant, we determine whether the defendant conclusively disproved an element of the plaintiff's claim or conclusively proved every element of an affirmative defense. We take evidence favorable to the nonmovant as true, and we indulge every reasonable inference and resolve every doubt in the nonmovant's favor. A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Alexander v. Wilmington Sav. Fund Society*, 555 S.W.3d 297, 299 (Tex. App.—Dallas 2018, no pet.). When, as in this case, the summary judgment does not specify the grounds on which it was granted, we affirm if any ground advanced in the motion is meritorious. *See Garza v. CTX Mortg. Co., LLC*, 285 S.W.3d 919, 922–23 (Tex. App.—Dallas 2009, no pet.).

On this record, we conclude that Dan's affidavit established prima facially that he did not breach any fiduciary duties regarding the ranch sale proceeds or any other assets that belonged to the Trust. Accordingly, our analysis is the same regardless of whether Dan's summary judgment motion is properly classified as a no evidence or a traditional summary judgment motion: Did Mary Ann and Jay adduce evidence sufficient to raise a genuine issue of material fact regarding whether Dan breached a fiduciary duty in connection with the disputed funds?

Based on this record, we conclude that they did not carry that burden either because they adduced no evidence that the disputed funds were ever actually Trust property or, if they were, that Dan breached a fiduciary duty regarding those funds.

### 2.     Breach of Fiduciary Duty

Jay and Mary Ann argue that Dan wrongfully retained Trust funds and co-mingled Trust funds with his own. We are not persuaded by these arguments.

Generally, the elements of a fiduciary breach claim are: (i) the existence of a fiduciary duty; (ii) breach of the duty, (iii) causation, and (iv) damages. *First United Pentecostal Church v. Parker*, 514 S.W.3d 214, 220 (Tex. 2014). Trustees owe beneficiaries certain fiduciary duties. *See Huie v. DeShazo*, 922 S.W.2d 920, 923 (Tex. 1996).

As previously discussed, however, there is no evidence that ranch notes or the livestock and equipment or their related proceeds were required to be placed in the Trust. Indeed, there is no evidence that those assets were ever actually conveyed to the Trust such that Dan could have owed Mary Ann and Jay fiduciary duties regarding them. Nor is there evidence that those assets were in a non-survivorship account when Father died.

Furthermore, the evidence shows that Father created the first survivorship account with Dan as the sole surviving party long before Father created the Trust. And after amending and restating the Trust agreement, Father later created the second survivorship account, again with Dan as the sole surviving party. There is no evidence that Dan had anything improper to do with establishing those accounts. The evidence also establishes that Father used the survivorship account during his lifetime to pay debts and living expenses. And the only evidence on the topic is that Father, not Dan, decided the sale proceeds would be placed in the survivorship account.

In short, the only evidence on this record is that, in fact, the sale proceeds, and hence, the survivorship account funds were not Trust property. *See In re Harden*, No.02-04-122-CV, 2004 WL 1597631, at *3 (Tex. App.—Fort Worth 2004, orig. proceeding) (survivorship account funds not part of probate estate for purpose of determining administrator's fiduciary obligations); *Punts v. Wilson*, 137 S.W.3d 889, 892 (Tex. App.—Texarkana 2004, no pet.) (P.O.D. accounts payee and trustee did not breach fiduciary duty to residuary estate beneficiary by taking possession of account funds that were not included in the estate).

Moreover, the Trust was a revocable trust. Father as settlor and co-trustee had the power to revoke the Trust and was the sole beneficiary of the Trust while alive. *See* TEX. PROP. CODE § 112.051. Father was free to fund the Trust and dispose of its property as he saw fit. *Moon*, 230 S.W.3d at 806.

Furthermore, Dan, as co-trustee of a revocable trust, owed his fiduciary duty to Father while Father was alive. The general rule is that:

> [T]he duties of a trustee of a revocable trust are owed exclusively to the settlor . . . the rights of non-settlor beneficiaries are generally subject to the control of the settlor. Thus, as a general rule, the trustee cannot be held to account by other beneficiaries for its administration of a revocable trust during the settlor's lifetime.

*Mayfield v. Peek*, 546 S.W.3d 253, 262 (Tex. App.—El Paso 2017, no pet.) (quoting George G. Bogert, Alan Newman, THE LAW OF TRUSTS AND TRUSTEES §964 (3d. ed. 2010).

Dan was co-trustee of the Trust during Father's lifetime and ceased being a trustee when Father died. There is no evidence that he misappropriated or did anything with Trust property during his tenure as trustee. The uncontroverted evidence is that, while a co-trustee, Dan also made no decisions about the expenditure of funds from the survivorship account, nor did he claim entitlement to any funds in that account. Instead, he helped Father pay his living expenses from the survivorship account as Father directed. It was not until Father died and Dan was no longer a trustee that he claimed the $216,000 in the account for which he was the named the surviving party. Sums remaining in a survivorship account after the death of one of the parties belong to the surviving party. *See* TEX. ESTATES. CODE § 113.151.

The argument that Dan co-mingled Trust property with his own likewise fails for the same reasons.

### III. Conclusion

Having resolved all of Jay and Mary Ann's issues against them, we affirm the trial court's judgment.

<div style="margin-left: 50%;">

/Bill Whitehill/
_____
BILL WHITEHILL
JUSTICE

</div>

180704F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE ESTATE OF JOHN M. LITTLE, JR., DECEASED

No. 05-18-00704-CV

On Appeal from the Probate Court No. 1, Dallas County, Texas
Trial Court Cause No. PR-15-03606-1.
Opinion delivered by Justice Whitehill. Justices Partida-Kipness and Pedersen, III participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee DAN LITTLE recover his costs of this appeal from appellants MARY ANN TATUM and JOHN LITTLE.

Judgment entered August 20, 2019.